1
2
3
4                  UNITED STATES DISTRICT COURT
5                        DISTRICT OF NEVADA
6                              * * *

7  NATIONSTAR MORTGAGE LLC,                    Case No. 2:16-cv-02542-RFB-DJA

8                  Plaintiff,                  **ORDER**

9        v.

10 SAFARI HOMEOWNERS ASSOCIATION,
   NEVADA ASSOCAITION SERVICES,
11 INC., SFR INVESTMENTS POOL 1, LLC,

12                 Defendants.
   SFR INVESTMENTS POOL 1, LLC,
13
                   Counter/Cross-Claimant,
14       v.
15 NATIONSTAR MORTGAGE, LLC, U.S.
   BANK, N.A., as trustee for the benefit of
16 HARBORVIEW 2005-8 TRUST FUND;
   CARLOS BOLANOS, an individual,
17
                   Counter/Cross-Defendants.
18
19
20     **I.    INTRODUCTION**
21         Before the Court are the Motion to Certify Question of Law by Defendant/Counter-
22 Claimant/Cross-Claimant SFR Investments Pool 1, LLC ("SFR" or the "Defendant"); Motion for
23 Summary Judgment by Plaintiff/Counter-Defendants/Cross-Defendant Nationstar Mortgage LLC
24 ("Nationstar) and Counter-Defendants/Cross-Defendant U.S. Bank National Association ("U.S.
25 Bank") (together, the "Plaintiffs"); Motion for Judgment on the Pleadings by Defendant SFR;
26 Motion for Summary Judgment by Defendant SFR; and Objection to a Magistrate Order by
27 Nationstar. ECF Nos. 190, 192, 193, 194, 220.  For the following reasons, the Motion for Summary
28 Judgement by Nationstar is granted and the remaining motions are denied.

## II.   PROCEDURAL BACKGROUND

On November 2, 2016, Plaintiff Nationstar filed a complaint and notice of <u>lis pendens</u>. ECF Nos. 1, 3. On June 6, 2017, Defendant Safari Homeowners Association ("Safari") filed a Motion to Dismiss. ECF No. 16. On June 19, 2017, Plaintiff filed a Motion for Entry of Clerk's Default as to Defendant Nevada Association Services, Inc. ("NAS") and the Clerk of Court entered default on June 20, 2017. ECF Nos. 18, 19. On July 3, 2017, Defendant SFR filed an Answer to the Complaint and filed counter claims against Plaintiff and cross claims against U.S. Bank and Carlos Bolanos. ECF No. 25.

On July 24, 2017, Nationstar and U.S. Bank jointly filed an Answer to SFR's cross and counter claim. ECF No. 31. On August 4, 2017, SFR filed a notice of <u>lis pendens</u>. ECF No. 35. On January 18, 2018, SFR filed a Motion for Entry of Clerk's Default as to Carlos Bolanos and on January 19, 2018, the Clerk of Court entered default. ECF Nos. 42, 43.

On March 22, 2018, the Court stayed the case because of its certification of a question of law to the Nevada Supreme Court in <u>Bank of N.Y. Mellon v. Star Hill Homeowners Ass'n</u>. ECF No. 54. The stay was lifted November 7, 2018. ECF No. 102. On October 9, 2018, Nationstar filed a Motion to Substitute U.S. Bank as Real Plaintiff in Interest. ECF No. 88. This Motion was mooted by the Court's order on January 6, 2019.  ECF No. 103. The order further dismissed Plaintiff's complaint in its entirety with prejudice but left the counter and cross claim by SFR. <u>Id</u>. On October 17, 2019, the Court stayed the case pending the result of the Nevada Supreme Court's order of <u>en banc</u> reconsideration in <u>Bank of America, N.A. v. Thomas Jessup, LLC Series VII</u>. ECF No. 133. The stay was lifted May 28, 2020. ECF No. 138.

On June 29, 2020, SFR filed a Motion for Summary Judgment and Case-Ending Sanctions in the Alternative. ECF Nos. 140, 141. Nationstar also filed a Motion for Summary Judgment. ECF No. 142. In its March 22, 2021, Order the Court granted SFR's Motion for Summary Judgment; granted SFR's Motion for Default Judgment as to Carlos Bolanos; and stayed entry of judgment and remained <u>lis pendens</u> pending the outcome of the Ninth Circuit certified question for the Nevada Supreme Court in <u>U.S. Bank, N.A. v. Thunder Properties, Inc.</u> ECF No. 164

On March 16, 2022, Nationstar filed a Motion to Alter or Amend the Court's Orders (ECF Nos. 103, 164) in light of the Nevada Supreme Court's <u>U.S. Bank, N.A. v. Thunder Properties, Inc.</u> decision. ECF No. 171. On March 16, 2023, the Court granted Nationstar's Motion to Amend. ECF No. 181. The order also reinstated Plaintiff's cause of action against SFR only as to its quiet title/declaratory judgment claim; vacated its March 22, 2021 Order (ECF No. 164) in its entirety; and opened limited discovery until May 1, 2023, to determine if or when SFR had affirmatively repudiated Nationstar's deed.

On November 9, 2023, SFR filed a Motion to Certify a Question of Law to Nevada's Supreme Court. ECF No. 190. On November 10, Nationstar and U.S. Bank filed a Motion for Summary Judgment. ECF No. 192. On November 17, SFR filed a Motion for Summary Judgment and a Motion for Judgment on the Pleadings. ECF Nos. 193, 194. On December 12, 2023, Nationstar and U.S. Bank filed a Motion to Substitute Party, requesting U.S. Bank to be named as Plaintiff in place of Nationstar. ECF No. 201. On March 20, 2024, Magistrate Judge Albregts denied Nationstar's Motion to Substitute and Nationstar, U.S. Bank filed an Objection on March 29, 2024. ECF Nos. 219, 220. On September 5, 2024, the Court held a hearing regarding the pending motions. ECF No. 226.

### III.    FACTUAL BACKGROUND

The Court finds the following facts to be undisputed.

On May 25, 2005, Carlos Bolanos obtained a $215,000 loan, secured by a deed of trust ("the deed") recorded against the real property at 3635 Lake Victoria Drive, North Las Vegas, Nevada 89032 ("the Subject Property"). The deed named Mortgage Electronic, Inc. ("MERS") as the original beneficiary. The senior deed of trust was recorded on June 2, 2005. MERS assigned the deed to U.S. Bank by assignment and recorded it on January 26, 2010.

On September 27, 2011, Safari, through its agent NAS, recorded a notice of delinquent assessment lien for $4,905.70. On October 11, 2011, NAS mailed a copy of the notice to Mr. Bolanos at the Subject Property. The certified and non-certified mailings were returned as undeliverable with no forwarding address. On November 1, 2011, NAS sent another correspondence to the Subject Property regarding the notice of delinquent assessment lien. This

1    correspondence was again returned as undeliverable and with no forwarding address. On
2    November 21, 2011, Safari and NAS recorded a Notice of Default and Election to Sell Under
3    Homeowners Association Lien. On December 27, 2011 Bank of America, N.A. ("BANA")
4    through Miles Bauer, sent a request for the superpriority amount along with an offer to pay this
5    amount. On June 12, 2012, Safari and NAS recorded a Notice of Foreclosure Sale. On August 10,
6    2012, SFR purchased the Subject Property.

7    The deed was assigned to Nationstar via an assignment of deed of trust recorded on October
8    24, 2013. The deed was then assigned to U.S. Bank via an assignment of deed of trust recorded on
9    August 5, 2014. The assignment recorded in 2013 to Nationstar was recorded in error. A discharge
10   of assignment was recorded on August 10, 2018. The assignment recorded in 2014 to U.S. Bank
11   was also recorded in error and was rescinded on September 4, 2018. The current beneficiary is
12   U.S. Bank.

13   The parties dispute whether tender was excused.

14   **IV.    LEGAL STANDARD**

15   Summary judgment is appropriate when the pleadings, depositions, answers to
16   interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no
17   genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."
18   Fed. R. Civ. P. 56(a); accord <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.
19   Ed. 2d 265(1986).When considering the propriety of summary judgment, the court views all facts
20   and draws all inferences in the light most favorable to the nonmoving party. <u>Gonzalez v. City of</u>
21   <u>Anaheim</u>, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the nonmoving
22   party "must do more than simply show that there is some metaphysical doubt as to the material
23   facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the
24   nonmoving party, there is no genuine issue for trial." <u>Scott v. Harris</u>, 550 U.S. 372, 380, 127 S. Ct.
25   1769, 167 L. Ed. 2d 686 (2007) (alteration in original) (internal quotation marks omitted).

26   It is improper for the Court to resolve genuine factual disputes or make credibility
27   determinations at the summary judgment stage. <u>Zetwick v. Cty. of Yolo</u>, 850 F.3d 436, 441 (9th
28   Cir. 2017) (citations omitted).

1    **V.   MOTION FOR SUMMARY JUDGMENT BY NATIONSTAR AND U.S.**
2         **BANK**

3         The parties bring several motions for summary judgment. The Court addresses each

4    motion, in turn. The Court first addresses Plaintiffs' Motion for Summary Judgment.

5                            **a.  Judicial Notice**

6         Plaintiffs request that the Court take judicial notice of several cases involving application

7    of the excused tender doctrine. It asks the Court to rely upon these cases as support for the

8    contention that BANA knew of the tender rejection policy of NAS and other companies.

9         Judicial notice permits a court to consider an adjudicative fact that is not subject to

10   reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction;

11   or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably

12   be questioned. Fed. R. Evid. 201(b)(1)-(2); see Fed. R. Evid. 201(b) advisory committee's note

13   ("With respect to judicial notice of adjudicative facts, the tradition has been one of caution in

14   requiring that the matter be beyond reasonable controversy.").

15        While documents that are public records may be judicially noticed for the purpose of

16   showing the occurrence of a judicial proceeding that a particular document was filed in separate

17   court case; judicial notice for the truth of the findings of facts from another case is not appropriate.

18   Wyatt v. Terhune, 315 F.3d 1108, 1114 n. 5 (9th Cir. 2003), overruled on other grounds by Albino

19   v. Baca, 747 F.3d 1162 (9th Cir. 2014) (en banc) ('[f]actual findings in one case ordinarily not

20   admissible for their truth in another case through judicial notice"); Lee v. City of Los Angeles, 250

21   F.3d 668, 689 (9th Cir. 2001) (while court may take judicial notice of "matters of public record,"

22   it may not take judicial notice of any fact "subject to reasonable dispute"); United States v. Jones,

23   29 F.3d 1549, 1553 (11th Cir. 1994) ("a court may take notice of another court's order only for

24   the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter

25   of the litigation"). In this case, Plaintiff requests that the Court make a factual determination based

26   on the filings of wholly distinct court cases. The Court does not find this to be appropriate and

27   declines to take judicial notice as requested.

28   ///

### b. Excused Tender

The Court now turns to the issue of tender. The Nevada Supreme Court has held that Nev. Rev. Stat. § 116.3116(2) provides a HOA with a superpriority lien that, when properly foreclosed upon, extinguishes a first deed of trust. 7510 Perla Del Mar Ave Tr. v. Bank of Am., N.A., 458 P.3d 348, 348 (Nev. 2020); see Nev. Rev. Stat. § 116.3116(2). The super-priority component of an HOA lien consists of "the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges," while the sub-priority component consists of "all other HOA fees and assessments." SFR Investments Pool 1 v. U.S. Bank, 334 P.3d 408, 411 (Nev. 2014). It further held that a deed of trust beneficiary can preserve its deed of trust by tending the superpriority portion of the HOA's lien before the foreclosure sale is held. Perla Del Mar, 458 P.3d at 349. An offer to pay the superpriority amount in the future does not constitute sufficient tender to preserve the first deed of trust. However, formal tender is excused when evidence shows that the party entitled to payment had a known policy of rejecting such payments. Id.

### i. Appropriateness of the Perla Standard

SFR asserts that the Nevada Supreme Court's decision in the Perla case is inapplicable for several reasons. First, SFR argues that there is no evidence that the request for the superpriority amount was ever received. The Court does not find this relevant. Perla does not require a request for a superiority amount if there is a known policy of rejection, as argued in the present motion.

Second, SFR asserts that SPS serviced the loan for part of the foreclosure process. SFR argues that while BANA, through Miles Bauer, may have had knowledge of a policy of rejection, there is no evidence that SPS had the required knowledge.

The Court finds that BANA serviced the loan at the relevant time periods. Plaintiff provides evidence that BANA serviced the loan from July 1, 2011 through November 30, 2012. And after this time, SPS became the servicer. Safari and NAS recorded a notice of delinquent assessment lien on September 27, 2011 and the property was sold at foreclosure on August 10, 2012. The Defendant points to the deposition testimony of Mr. Keith Kovalic, a litigation resolution analyst with Nationstar, to argue that SPS started servicing the loan sometime between June 13, 2012 and April 1, 2014. (ECF No. 204-3.) This statement does not contradict the Plaintiff's assertion as

November 30, 2012 falls within this time range. BANA asserts that it serviced the loan during this time period, and there is no evidence which contradicts this assertion.

Third, SFS declares that the request for the tender of the superpriority amount was sent with a letter that contained conditional language. However, this is not a barrier to appropriate tender. In a similar case before the Nevada Supreme Court, the panel held that "[a]lthough Bank of America's tender included a condition, it had a right to insist on the condition. Bank of America's letter stated that acceptance of the tender would satisfy the superiority portion of the lien, preserving Bank of America's interest in the property. Bank of America had a legal right to insist on this. [The Defendant's] claim that this  made the tender impermissibly conditional because the payment required to satisfy the superpriority portion of an HOA lien was legally unsettled at the time is unpersuasive." Bank of Am., N.A. v. SFR Invs. Pool 1, Ltd. Liab. Co., 427 P.3d 113, 118 (Nev. 2018). The Court finds that all of SFR's arguments regarding the inapplicability of Perla fail.

### ii.   Application of the Perla Standard

The Court now applies the Perla standards to this case. Perla requires that (1) there is policy of rejecting any tender that is less than the full lien amount and (2) the party to tender knows of that policy. Perla Del Mar, 458 P.3d at 351.

Plaintiffs argue that NAS has a known policy of rejection that has already been adjudicated. Nationstar provides a host of cases where tender was excused based upon a combination of evidence that it asserts it would likely also put forward in this case. The motion specifically points to testimony from NAS corporate counsel, Chris Yegensen, and Miles Bauer employee, Rock Jung. The testimony from Mr. Yegensen is a transcript from a bench trial in a state court case.[1] The Court does not find it appropriate to consider this testimony for adjudication on this motion as the case dealt with different parties and different Subject Property.  See Fed. R. Civ. P. 32(a)(8) (a deposition may only be used in a later action if the earlier deposition involved the same subject matter and the same parties, or their representatives or successors in interest); Fed. R. Evid. 801,

---

[1] TRP Fund IV LLC v. Bank of America NA, Case No. A-14-695770-C, Eighth Judicial District Court of Nevada (May 24, 2017).

802 & 804(b)(1) (a deposition taken in a different proceeding is admissible only if the party against whom it is offered was provided with an opportunity to examine the deponent and a similar motive for doing so); see also In re Oracle Corp. Sec. Litig., 627 F.3d 376, 386 (9th Cir. 2010) ("[T]he content of a deposition is not a clearly established 'fact' of which this panel can take notice."); 21B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 5106.4 (2d ed. 2005) ("Importantly, 'a court cannot notice pleadings or testimony as true simply because these statements are filed with the court.'")).

The declaration from Mr. Jung notes that Miles Bauer was hired by BANA "at least 5,000-6,000" times to obtain superpriority lien information and provide payment. He states that he is familiar with NAS. In "2011 or 2012," "[b]ased on [his] communications with NAS" he was informed that the superpriority information sought was protected by the Fair Debt Collection Practices Act ("FDCPA"). It was Miles Bauer's practice to issue 9 months of unpaid assessments in satisfaction of the superpriority portion of the lien. However, Mr. Jung asserts that regardless of the specific response Miles Bauer received, NAS was always unwilling to accept payment in satisfaction of the superpriority lien. He states that, in late 2011 and 2012, NAS uniformly refused to accept the tender. He concludes that "[b]ased on [his] knowledge of NAS' practices developed over the course of several years … any attempt to pay 9 months of unpaid assessments in satisfaction of the superpriority portion of the line, in late 2011 and 2012, would have been futile."

SFS counters by pointing to a declaration from Ms. Susan Moses, a paralegal and custodian of records with NAS since 2009. She states that she did not receive a letter from Miles Bauer requesting lien information. She states that "[i]n 2011, if NAS had received a request for payoff information from a third party like Miles Bauer, it would respond by providing a full account ledger, typically by email." She also states that "[i]n 2011, NAS' policy, practice and/or procedure with respect to partial payments by third parties was to accept those payments." At the hearing on this motion, defense counsel emphasized that the deposition testimony of Mr. Keith Kovalic states that SPS started servicing the loan sometime between June 13, 2012 and April 1, 2014. ECF No. 204-3.

As noted, Safari, through NAS, recorded a notice of delinquent assessment lien on

1    September 27, 2011;  a notice of default and election to sell on November 21, 2011; and, finally,

2    a notice of foreclosure sale on June 12, 2102. Accordingly, it is this time period – September 27,

3    2011 to June 12, 2012 – that is the relevant time period for the Perla analysis. During this time

4    period, it is undisputed that BANA serviced the loan. Plaintiff supplies evidence that BANA began

5    servicing the loan on July 1, 2011 and stopped servicing the loan on November 30, 2012. ECF No.

6    218-7. The Defendant's evidence does not dispute this. Mr. Kovalic's testimony states that SPS

7    started servicing the loan sometime between June 2012 and April 2014. This does not dispute the

8    evidence provided by Plaintiffs as November 30, 2012 falls within this timeframe.

9          Plaintiffs further provides evidence that BANA, through Miles Bauer, sent a check for the

10   superpriority amount accompanied by a letter that conditioned the acceptance of the check as

11   payment in full of the HOA's lien. BANA had a legal right to insist on this. Bank of Am., N.A. v.

12   SFR Invs. Pool 1, Ltd. Liab. Co., 427 P.3d 113, 118 (Nev. 2018). The parties do not dispute that a

13   check accompanied by a letter with this type of conditional language would have been rejected.

14   While Ms. Moses states that NAS would have accepted payment, she does not state that NAS

15   would have accepted payment accompanied by conditional language. Therefore, this testimony

16   does not dispute Plaintiffs assertions. The declaration of Mr. Jung presents evidence that the

17   tendering party knew of the rejection policy in place during the relevant time period.

18         Therefore, since there is uncontested evidence that NAS had a policy of rejecting any

19   tender and the party to tender knew of that policy, tender is excused. See 7510 Perla Del Mar Ave

20   Tr. v. Bank of Am., N.A., 458 P.3d 348, 348 (2020) ("formal tender is excused when evidence

21   shows that the party entitled to payment had a known policy of rejecting such payments"). The

22   Court finds that there is no genuine issue of material fact with regard to this issue.

23                              **c.  Statute of Limitations**

24         The parties dispute whether the statute of limitations has run in this case. The four-year

25   catch-all statute of limitations, Nev. Rev. Stat. § 11.220, applies to an action to determine the

26   validity of a lien under Nev. Rev. Stat. § 40.010. The statute of limitations does not begin to run

27   until the titleholder affirmatively repudiates the lien, which does not necessarily happen at the

28   foreclosure sale. U.S. Bank, N.A. v. Thunder Props., 503 P.3d 299 (Nev. 2022). Likewise, rejecting

payment of the lien does not trigger the statute of limitations. See Wells Fargo Bank, N.A. v. The Springs at Centennial Ranch Homeowners Ass'n, 2023 WL 6890086, at *1 (9th Cir. Oct. 19, 2023) ("SFR, the titleholder, does not suggest that it took any affirmative action to repudiate Wells Fargo's lien; its general policy of refuting the continued existence of deeds of trust on properties it purchased at HOA foreclosure sales is not an affirmative action"); Bank of N.Y. Mellon v. 4655 Gracemont Ave. Tr., 2022 WL 16732021 (9th Cir. Nov. 7, 2022) (rejecting the lack of payment, among other events, as a statute of limitations' trigger date).

An HOA foreclosure sale — standing alone – does not sufficiently call the bank's deed of trust into question to trigger the statute of limitations. Thunder Props, 503 P.3d at 307. It is more akin to notice of an adverse claim than notice of disturbed possession or someone pressing an adverse claim. Id. To rise to the level that would trigger the limitations period, something more is required. Id. Here, there is no affirmative action to trigger the statute of limitations.

Indeed, SFS does not argue that it took affirmative action. Instead it argues that Thunder Properties should only be applied in a retroactive manner. However, the Ninth Circuit has held that this argument is "meritless." SFR Invs. Pool 1, LLC v. Bank of Am., NA., No. 22-16472, 2023 U.S. App. LEXIS 32915 (9th Cir. Dec. 13, 2023) (citing Huddleston v. Dwyer, 322 U.S. 232, 236 (1944) (per curium)). Accordingly, there is no genuine issue of material fact regarding this issue.

### d. Validity of the Sale

Plaintiffs assert that equity warrants reforming the sale of the Subject Property. Under Nevada law, courts retain discretion to set aside a foreclosure sale if two circumstances are present: (1) an unreasonably low sales price, and (2) fraud, unfairness, or oppression that affected the sale. Nationstar Mortg., LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon, 405 P.3d 641, 648 (Nev. 2017). The two factors work together: a greater disparity in purchase price relative to market value requires only slight evidence of unfairness that affected the sale. Id. But "mere inadequacy of price is not in itself sufficient to set aside the foreclosure sale." Id. "The party seeking to set aside the sale on  equitable grounds bears the burden to produce evidence showing that the sale was affected by fraud, unfairness, or oppression that would justify setting aside the sale." Res.

Grp., LLC v. Nev. Ass'n Servs., 437 P.3d 154, 160 (Nev. 2019) (en banc) (brackets and internal quotation marks omitted). If the record contains "no evidence that the sale was affected by fraud, unfairness, or oppression, then the sale cannot be set aside regardless of the inadequacy of price." Shadow Canyon, 405 P.3d at 648-49.

#### i. Discussion

First, Plaintiff asserts that property was sold for a grossly inadequate price. The Nevada Supreme Court has identified a sale price of 10% to 15% of a property's fair market value as a grossly inadequate price. U.S. Bank v. Res. Grp., LLC, 444 P.3d 442, 449 (2019). Here, the Subject Property sold for about  9% of its fair market value. The Court finds that this sales price was similarly inadequate. Because of that low purchase price, Plaintiffs must produce only slight evidence of fraud, unfairness, or oppression that affected the sale. See United States Bank, N.A. v. White Horse Estates Homeowners Ass'n, 987 F.3d 858, 864 (9th Cir. 2021).

Second, Plaintiff asserts that the HOA sale was unfair because NAS refused to provide a ledger to Miles Bauer in violation of its own covenants, conditions, and restrictions. However, Plaintiff does not support this proposition with any binding case law. Accordingly, this argument is unpersuasive.

Third, Plaintiff argues that representations made by Safari constitute sufficient unfairness to justify setting aside the sale. The Nevada Supreme Court recognized one "irregularit[y] that may rise to the level of fraud, unfairness, or oppression" is "an HOA's representation that the foreclosure sale will not extinguish the first deed of trust." Nationstar Mortg. LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon, 405 P.3d 648 n.11 (Nev. 2017) (referencing Zzyzx 2 v. Dizon, No. 2:13-CV-1307 JCM (PAL), 2016 U.S. Dist. LEXIS 39467 (D. Nev. Mar. 25, 2016)). In the Dizon case, the HOA represented to "both the general public as well as Wells Fargo that the association's foreclosure would not extinguish the first deed of trust. The association sent a letter to Wells Fargo and other interested parties stating that its foreclosure would not affect the senior lender/mortgage holder's lien. Wells Fargo, consequently, had no notice from the association that its interest was at risk and that it should pay off the HOA loan." Zzyzx 2 v. Dizon, No. 2:13-CV-1307 JCM (PAL) at *12-13, 2016 U.S. Dist. LEXIS 39467 (D. Nev. Mar. 25, 2016). Plaintiff

1   asserts that NAS engaged in this irregularity through a press release referenced in a reply brief

2   filed in a separate case.[2]  The Court declines to take judicial notice of this document, filed in a

3   distinct and separate proceeding, for its truthfulness as applied to this proceeding. Plaintiffs present

4   no evidence that NAS sent a letter similar to the one present in <u>Dizon</u> in this case. Accordingly,

5   this argument is unpersuasive. The Court finds no irregularities which rise to the level of fraud,

6   unfairness, or oppression. Therefore, the Court concludes that the sale was valid.

7                                    **e.   Voiding of the Sale**

8           Plaintiffs assert that the Nevada Supreme Court's decision in <u>Diakonos Holdings, LLC v.</u>

9   <u>Nationstar Mortg., LLC</u>, provides support for the voiding of the present sale. 443 P.3d 1126 (Nev.

10  2019). In <u>Diakonos</u> the district court determined that state foreclosure notice provisions impose a

11  duty of reasonable inquiry on an HOA to locate a unit owner's successor in interest when the HOA

12  is aware that the unit owner is deceased and is aware that the foreclosure notices are not being

13  successfully delivered to the property address. The HOA made no inquiry whatsoever and the

14  district court declared the sale void for failure to abide by the notice requirements. In the Court's

15  unpublished decision, it held that "based on the facts of this case and the arguments that have been

16  timely raised, [it was] not persuaded that the district court erred in declaring the sale void based

17  on the HOA's failure to make any effort to locate the unit owner's successor in interest such that

18  the statutorily required foreclosure notices could be successfully delivered." <u>Id.</u> at *1 (referencing

19  Nev. R. Stat. § 116.31162, 116.311635).

20          Plaintiffs assert that this decision creates a duty of reasonable inquiry on an HOA to make

21  a reasonable effort to provide statutorily-required notice to borrowers. Plaintiff asserts that NAS

22  knew, or should have known, that it had a duty to take reasonable steps to provide notice to the

23  borrower. The Court does not interpret this decision so broadly. Here, NAS did send the statutorily

24  required notices by certified mail. The mail was returned "not deliverable as addressed" and

25  "unable to forward." Plaintiff has cited to no Nevada caselaw interpreting NRS Chapter 116 to

26  have such a strict requirement or harsh penalty as it relates to notice. And the Court declines to

27  

28          [2] Reply to BAC's LP's Opposition to Defendants' Motion to Dismiss, <u>Stonefield II</u>, No.
    2:11-cv-00167-JCM-RJJ (D. Nev. June 3, 2011), ECF No. 125 at 3:21–22.

1    devise one. Accordingly, the Court finds that the sale is not void.

2          **VI.    MOTION FOR SUMMARY JUDGMENT BY SFR INVESTMENTS**

3           SFR argues that Nationstar lacks Article III and prudential standing to assert claims or

4    defenses based on its lack of interest in the Subject Property. SFR claims that Nationstar cannot

5    establish an injury-in-fact because Nationstar lacked any interest in the deed of trust at the time

6    the complaint was filed and at the present time. SFR relies on the fact that Nationstar's 2013 and

7    2014 assignments to the deed of trust were discharged and rescinded in 2018. This leaves the last

8    assignment of record as the 2010 assignment from MERS to U.S. Bank. Nationstar responds that

9    it has servicer standing.

10          In order to establish Article III standing, a plaintiff must show (i) that he suffered an injury

11   in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused

12   by the defendant; and (iii) that the injury would likely be redressed by judicial relief. TransUnion

13   LLC v. Ramirez, 141 S. Ct. 2190, 2203 (2021) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555,

14   560-61 (1992)). Standing is determined by the facts that exist at the time the complaint is filed."

15   Clark v. City of Lakewood, 259 F.3d 996, 1006 (9th Cir. 2001). It is jurisdictional and can neither

16   be waived by the parties nor ignored by the court. Yakima Valley Mem'l Hosp. v. Wash. State

17   Dep't of Health, 654 F.3d 919, 932 n.17 (9th Cir. 2011).

18          Prudential standing is a set of "judicially self-imposed limits on the exercise of federal

19   jurisdiction" that are non-constitutional in nature. City of L.A. v. Cnty. of Kern, 581 F.3d 841, 845

20   (9th Cir. 2009) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)). Prudential standing consists

21   of "the general prohibition on a litigant's raising another person's legal rights, the rule barring

22   adjudication of generalized grievances more appropriately addressed in representative branches,

23   and the requirement that a plaintiff's complaint fall within the zone of interests protected by the

24   law invoked." Id. (internal quotation marks omitted). Unlike constitutional standing, lack of

25   prudential standing does not deprive the court of subject matter jurisdiction. Dunmore v. United

26   States, 358 F.3d 1107, 1111-12 (9th Cir. 2004).

27          The United States Supreme Court has held that an assignee of a claim can bring suit. Sprint

28   Communs. Co., L.P. v. APCC Servs., 554 U.S. 269, 286 (2008). Likewise, the Nevada Supreme

1    Court has held that a  mortgage may be enforced by, or in behalf of, an entity who is entitled to

2    enforce the obligation the mortgage secures. See Montierth v. Deutsche Bank (In re Montierth),

3    131 Nev., Adv. Op. 55, 354 P.3d 648, 651 (2015) (quoting Restatement (Third) of Prop. Mortgages

4    § 5.4(c) (1997)). A loan servicer administers a mortgage on behalf of the loan owner, and the rights

5    and obligations of the loan servicer are typically established in a servicing agreement. Nationstar

6    Mortg., Ltd. Liab. Co. v. SFR Invs. Pool 1, Ltd. Liab. Co., 396 P.3d 754, 756-67 (2017).

7         The senior deed of trust was assigned to U.S. Bank on January 26, 2010. The deed of trust

8    was then assigned to Nationstar via an assignment of deed of trust recorded on October 24, 2013.

9    The senior deed of trust was then assigned to Nationstar via an assignment of deed of trust recorded

10   on August 5, 2014. The complaint which initiated this case was filed on June 6, 2017. The

11   assignment to Nationstar was not rescinded until 2018.

12        Standing is determined by the facts that exist at the time the complaint is filed. Clark v.

13   City of Lakewood, 259 F.3d 996, 1006 (9th Cir. 2001). Accordingly, Nationstar held the senior

14   deed of trust and had sufficient standing to bring the Complaint at the time it was filed. Currently,

15   Nationstar maintains that it holds a contractual, servicer relationship with U.S. Bank. See Sprint

16   Comm'ns Co., L.P. v. APCC Servs., Inc., 554 U.S. 269, 271-72 ("The United States Supreme

17   Court recognizes Article III standing may be conferred by contract or assignment.") Hence, the

18   Court finds that Nationstar also currently maintains Article III standing. Separately, a loan servicer

19   is the entity which administers a mortgage on behalf of the loan owner and enforces a mortgage

20   granting it the appropriate standing to bring suit. See Nationstar, 396 P.3d at 756-57. As the loan

21   servicer to U.S. Bank, the Court finds that Nationstar maintains prudential standing. Consequently,

22   the Court denies SFR's Motion for Summary Judgment.

23        **VII.    MOTION FOR JUDGMENT ON THE PLEADINGS**

24        SFR notes that when it filed its answer, counter-claim and cross-claim for quiet title  that

25   it alleged U.S. Bank may claim an interest in the Subject Property. SFR claims that in its answer

26   U.S. Bank denied it claimed an interest in the Property. Nationstar and U.S. Bank contend that

27   SFR utilizes a mere technical distinction between the two parties based upon recordings that have

28   been corrected.

### a. Legal Standard

When considering a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), a court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009) (quoting Turner v. Cook, 362 F.3d 1219, 1225 (9th Cir. 2004)). Judgment on the pleadings is properly granted when there is no material fact in dispute, and the moving party is entitled to judgment as a matter of law. Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009).

"However, judgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1989) (citations omitted). A Rule 12(c) motion may be based on either (1) the lack of a cognizable legal theory, or (2) insufficient facts to allege a cognizable claim. Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019).

The movant is entitled to judgment only where it has been "clearly established on the face of the pleadings that no material issue of fact remains to be resolved." Hal Roach Studios, Inc. v. Richard Feiner and Co, Inc., 896 F.2d 1542, 1550 (9th Cir. 1989). An "analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, 'a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.'" Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012). A motion for judgment on the pleadings may be brought, "after pleadings are closed – but early enough not to delay trial." Fed. R. Civ. P. 12(c).

### b. Discussion

Pleadings are "closed" once a complaint and answers by all defendants have been filed. Fed. R. Civ. P. 7. However, if a counterclaim, cross-claim or third-party claim is interposed, the pleadings are "closed" when an answer to a counterclaim, cross-claim or third-party complaint is filed, except in the cases of a court-ordered reply to an answer. Id. In this case, the pleadings were not closed until the answers to the counterclaims were filed.

U.S. Bank filed its answer to SFR's counterclaim on July 24, 2017. At that time, the senior

deed of trust was still held by Nationstar. This was later corrected and the senior deed of trust was transferred to U.S. Bank. The answer states that, "Nationstar and U.S. Bank further admit Nationstar claims an interest in the property via a deed of trust originated by Spectrum Financial Group, Inc. in 2005 and assigned to Nationstar via assignments in 2013 and 2014." SFR argues that since U.S. Bank denied an interest in the Subject Property, it therefore also admitted to SFR's superior title.

A Rule 12(c) motion for judgment on the pleadings should be converted into a Rule 56 motion for summary judgment if matters outside the pleadings are considered by the court. Yakima Valley Memorial Hosp. v. Wash. State Dep't of Health, 654 F.3d 919, 925 n.6 (9th Cir. 2011) ("Judgment on the pleadings is limited to material included in the pleadings …. Otherwise, the proceeding is converted to summary judgment."). The district court  has discretion to convert or not to convert a motion for judgment on the pleadings into a summary judgment motion. Id.

Ignoring the corrected assignments and subsequent pleadings this far into the case and after the motions for summary judgment have been filed would lead this court to erroneous conclusions. The Court finds this to be sufficient cause to convert the motion for judgment on the pleadings to a motion for summary judgment. In light of those corrected assignments which identify U.S. Bank as the current holder of the senior deed of trust, the Court finds there is a genuine issue of a material fact. Accordingly, Defendant's Motion for Summary Judgment is denied.

**VIII.     OBJECTION TO MAGISTRATE ORDER**

On March 20, 2024, Nationstar and U.S. Bank submitted a joint renewed motion requesting to substitute U.S. Bank in place of Nationstar as plaintiff and beneficiary of the deed of trust underlying this action. Plaintiffs asserted that the Court should substitute U.S. Bank in place of Nationstar to properly reflect the corrected assignments of title. Plaintiffs further argued that substitution is critical here because SFR is attempting to strategically use the prior recording errors, which were later corrected, as a basis to deprive U.S. Bank of its property interest. It asserts Nationstar and U.S. Bank are in privity—Nationstar asserts precisely the same right U.S. Bank would assert with respect to the deed of trust. Additionally, U.S. Bank will assume Nationstar's claims and defenses.

1    The Honorable Magistrate Judge Albregts denied the motion. He asserted that the movants
2    failed to address what considerations guide the Court's discretion in making a ruling on
3    substitution. Magistrate Judge Albregts held that movants left the Court unable to exercise its
4    discretion because they did not explain how substitution would facilitate the conduct of the
5    litigation. See Educ. Credit Mgmt. Corp. v. Bernal (In re Bernal), 207 F.3d 595, 598 (9th Cir.
6    2000) (citation omitted). The Court held that if movants renew their motion for Rule 25 relief, they
7    must establish: (1) a valid transfer of interest under Nevada law; and (2) that the Court should
8    exercise its discretion to grant Rule 25(c) relief because the substitution would facilitate the
9    conduct of this litigation.

10    The movants filed an objection to Magistrate Judge Albregts' order. They argue that the
11    Court should grant the substitution to properly reflect the corrected recorded assignments.

12    A district court "may accept, reject, or modify, in whole or in part, the findings or
13    recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). A party may file specific
14    written objections to the findings and recommendations of a magistrate judge. 28 U.S.C. §
15    636(b)(1); Local Rule IB 3-2(a). When written objections have been filed, the district court is
16    required to "make a de novo determination of those portions of the report or specified proposed
17    findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see also Local
18    Rule IB 3-2(b).

19    The Court has conducted a de novo review. Federal Rule of Civil Procedure 25 provides
20    that if an interest is transferred, the action may be continued by or against the original party unless
21    the court, on motion, orders the transferee to be substituted in the action or joined with the original
22    party. Fed. R. Civ. P. 25(c). The rule is not designed to create new relationships among parties to
23    a suit but is designed to allow the action to continue unabated when an interest in the lawsuit
24    changes hands. In re Banal, 207 F.3d at 598 (citing Collateral Control Corp. v. Deal (In re
25    Covington Grain Co., Inc.), 638 F.2d 1362, 1364 (5th Cir. 1981)). The most significant feature of
26    the rule is that it does  not require that anything be done after an interest has been transferred. Id.
27    (citing 7C Charles Alan Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 1958 (2d Ed. 1986)
28    (footnote omitted)). The action may be continued by or against the original party, and the judgment

will be binding on his successor in interest even though he is not named.  Id.

The Court sustains the objection to Magistrate Judge Albregts' order. The movants have demonstrated a transfer of assignment such that U.S. Bank is the proper plaintiff in this case. In In Re Banal, the Ninth Circuit determined that "[a]n order of joinder is merely a discretionary determination by the trial court that the transferee's presence would facilitate the conduct of the litigation." Id. Here, there is no order of joinder at issue. The rule is constructed so that the parties can continue this litigation in an efficient manner once a transfer of interest occurs, and nothing further is required after that transfer of interest. Accordingly, the Objection to the Magistrate Order is granted.

### IX.    CONCLUSION

**IT IS THEREFORE ORDERED** that the (ECF No. 192) Motion for Summary Judgment by Plaintiff-Counter Defendant Nationstar Mortgage and Cross Defendant U.S. Bank is **GRANTED**.

**IT IS FURTHER ORDERED** that (ECF No. 193) Motion for Judgment on the Pleadings by Defendant-Counter Claimant SFR Investments against Cross Defendant U.S. Bank is **DENIED**.

**IT IS FURTHER ORDERED** that the (ECF No. 194) Motion for Summary Judgment by Defendant-Counter Claimant SFR Investments against Plaintiff-Counter Defendant Nationstar is **DENIED**.

**IT IS FURTHER ORDERED** that the (ECF No. 220) Objection to Magistrate Order by Plaintiff-Counter Defendant Nationstar Mortgage and Cross Defendant U.S. Bank is **GRANTED**. The Clerk of Court is ordered to substitute U.S. Bank as Plaintiff.

///

///

///

///

///

///

1      **IT IS FURTHER ORDERED** that the Clerk of Court is instructed to enter judgment in

2  favor of U.S. Bank. U.S. Bank preserved its interest in the Subject Property such that SFR

3  purchased the property subject to U.S. Bank's deed of trust. The Clerk of Court is instructed to

4  close this case.

5      **DATED:** <u>September 30, 2024</u>

6

7

8

9                                          _____

10                                         **RICHARD F. BOULWARE, II**
                                           **UNITED STATES DISTRICT JUDGE**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 19 -